BRITISH OAK, The (FOSTER v.). See Case No. 4,966.

BRITTAIN v. The CITY OF FREMONT. See Case No. 2,746.

## Case No. 1,902.
### BRITTAN v. The ALBONI.
[35 Hunt, Mer. Mag. 194.]

District Court, D. California. March 10, 1856.[1]

BILLS OF LADING—DELIVERY—PAYMENT OF FREIGHT—CUSTOM AND USAGE.

[A bill of lading for delivery of goods in San Francisco had, in addition to its usual form, the words: "Goods to be received at the ship's tackles when ready for delivery. Freight payable prior to delivery, if required." In such port, by custom, the whole freight became payable upon the receipt by the consignee of the ship's daily discharge. *Held*, that a consignee, refusing to pay the whole freight upon receipt of a single day's discharge, was liable to transportation and warehouse charges upon the whole shipment.]

[See note at end of case.]

[In admiralty. Libel by John W. Brittan against the ship Alboni (William A. Barnaby, claimant) to recover value of goods shipped in New York for delivery at San Francisco. Libel dismissed.]

HOFFMAN, District Judge. The libel in this case is filed to recover the value of certain goods consigned to the libelant under a bill of lading. The bill is in the usual form, except that upon its face is stamped. the following words:—"Goods to be received at the ship's tackles when ready for delivery. Freight payable prior to delivery if required." On the arrival of the ship, the libelant was duly notified thereof, and when the discharge of his goods had commenced, he was fully cognizant of the fact. On the first day, a portion of the contents of his bill of lading having been landed upon the wharf, he thereupon called upon the agents of the ship, and demanded a delivery of the goods so discharging, offering to pay the freight due on them. This the consignees of the ship refused to accede. to, but required him to pay all the freight due on the whole contents of the bill of lading. The libelant then professed his willingness to do so, provided all the goods were ready for delivery; but he declined to take a delivery order for the goods, and receive them as they came out in the usual course of the discharge. These offers were repeated from day to day while the vessel was being unladen; and on the last day the libelant again demanded his goods, tendering the whole amount of freight due by the bill of lading. A delivery order for the goods was thereupon offered him, but subject to the charges for storage and cartage which had accrued upon them. The goods had, in accordance with a notice to that effect given by the ship's agent, been placed in a public warehouse each night when the ship ceased to discharge; and it is satisfactorily proved that this disposition of the goods was not only necessary for their

[1] [Affirmed by circuit court (case not reported). The judgment of the circuit court was reversed in Brittan v. Barnaby, 21 How. (62 U. S.) 527.]

safety, but rendered unavoidable by the fact that the goods are not suffered to remain on the wharf at night. The libelant, however, declined to pay his freight and receive his goods subject to these charges, and thereupon filed his libel for non-delivery. It is not suggested that the charges upon the goods were any other or greater than the expenses necessarily incurred in transporting them to, and keeping them in, a warehouse during the progress of the discharge, and the question to be determined is whether, under the circumstances, these charges should be borne by the shipper or shipowner.

It is urged on behalf of the libelants, that the mere readiness to deliver the goods as they came out of the ship in the usual course of the discharge, is not sufficient to entitle the master to demand his freight; that the shipper has a right to insist upon the goods being landed and submitted to his inspection before making himself liable, at all events for the freight, and that if the master insists upon retaining all the goods until all the freight be paid, he must at his own expense keep them until they are collected for a simultaneous delivery. In the ordinary form of the bill of lading, the master stipulates to deliver the goods "to the shipper or his assigns, he or they paying freight." This has been held to import an agreement on the part of the shipper, that he or his assigns will pay the freight if the master will, at the time of the payment, deliver the goods to him or them. 2 Sumn. 603 [Certain Logs of Mahogany, Case No. 2,559]. The same construction is given to a stipulation in a charter party, which provides for a payment of freight "on delivery of the cargo." Yates v. Railston, 2 Moore, 294. In these cases the payment of the freight and the delivery of the cargo are held to be concomitant acts, and the master is allowed a lien or right to retain the cargo until the freight is paid. But in the adjustment of these rights a practical difficulty arises. The payment of freight is a single act, which can be done instantaneously. The delivery of a cargo, or even the contents of a bill of lading, must of necessity be progressive, and will naturally require several days before it can be completed. The shipper has no right to his goods, or any part of them, until the freight be paid; and if he insists on his right to examine his goods before paying any of his freight, he obliges the master to store them during the progress of the delivery until all be delivered together. In the case of a large clipper ship this disposition of all the goods, if required by the consignees, would entail upon the ship a very considerable expense, and to avoid this, a practice has arisen to notify the shippers of the readiness of the ship to discharge—to collect the freight bills, and give the consignees orders, under which they receive their goods as they come out of the ship. It appears in evidence that this usage has obtained due regard here almost since the foundation of the city; that it is almost universally adopted, and though not in every case with the full acquiescence of the shippers, or without some doubts as to their rights on the part of the agent of the ship, yet it has become with some of the largest houses the almost invariable practice; that this practice is well known to shippers at home, and is understood to be the usage of this port. In conformity with this usage, a stipulation, or at least a notice, is stamped upon the bill of lading, expressing that the goods are to be "received at the ship's tackles when ready for delivery," and that freight is payable prior to delivery if required. The object of this stamp is well understood by the shippers to be, to give to the ship the right to collect the freight in the manner which has been mentioned; and this is still more conclusively shown by the fact that in some bills of lading where this mode of payment is not intended, the stamp is omitted, and it is expressly stated that the freight is to be paid "on delivery." That the libelant in this case was aware of the custom prevailing at this port, and of the right intended to be secured by the stamp, is not, as I understand, denied. In one of the bills of lading, at least, for other goods by this same ship, it is expressly mentioned in the body of the bill, that the goods are to be delivered from the vessel's tackle, when ready for delivery, to the shipper or his assigns, "he or they paying freight for said goods before delivery if required." It is presumed that under such a bill of lading it will not be denied that the shipper would be bound to receive his goods as they come out of the ship—first paying freight on them. The bill of lading in the present case contains precisely the same provisions, with the difference only that they are stamped on the face, and not printed in the body of the instrument. I am not aware of any principle which would authorize the rejection of these words merely because they are stamped and not written in the contract, or because they are printed in red ink, and not in black ink.

It is not necessary to inquire whether the evidence of the usage was such as to make it bind the parties as a term of their contract, if their knowledge of it and their intention to adopt it were to be inferred merely from the fact of its existence. In this case, not only is the knowledge directly brought home to them, but a distinct reference to the usage made on the face of the bill of lading, and an express stipulation that freight shall be paid before delivery is incorporated in another bill of goods by the same shipper on the same ship. I think, therefore, that it must be considered that these goods were shipped to be delivered, and the freight to be paid, in conformity with the general usage at this port. It is well known that the mode of delivering goods depends mainly upon the usage of the port. It is not denied that by the general usage of this port,

a delivery on the wharf, with due notice to consignee, is sufficient to discharge the carrier. 2 Kent, Comm. 605. His remuneration is, therefore, for carrying the goods, and delivering them on the wharf. But the delivery now insisted on, is a simultaneous one, which can only be made at a warehouse, and cannot be made at a wharf or at ship's tackles, as mentioned in the bill of lading. Such a delivery would impose upon the ship an expense which I do not conceive to have been contemplated in the contract. There is nothing unreasonable or inconvenient in a usage which makes a progressive delivery at the wharf, as the goods come to hand, a good delivery by the carrier, if due notice be given, and the consignee be allowed a reasonable time to get his goods. Such, I understand, to be the practice at this port, and it is not easy to see how any other rule could prevail, unless the ship is held to the duty of collecting in warehouses all the contents of each bill of lading, before they are tendered to the consignees. If, then, a progressive delivery be the only delivery practicable, as it is, if made at the wharf or at ship's tackles, either the shipper must pay freight when that delivery commences, or the carrier compelled to part with a portion of his best, and in many instances his only, security. It has been, in a previous case, considered by this court, that if under these circumstances the shipper declines to receive his goods as they are landed, first paying freight, and it thus becomes necessary to send them to a warehouse until collected together, the expense ought to fall upon him. But in this case, where it has been shown that the usage almost invariably is to collect the freight when the delivery is about to commence, and the bill of lading evidently contemplates and adopts that usage, and specifies that the delivery shall be at the ship's tackles, I think it clear that the shipper was bound so to pay his freight and receive his goods; and that if by reason of his refusal to do so, or by his insisting on a simultaneous delivery, which could only be made at a warehouse, any additional charges have been incurred, they must be borne by him. The offer, therefore, of the ship to deliver the goods subject to that charge, was all that he had a right to demand. If this rule should be found inconvenient to shippers, the remedy is obvious—to refuse to ship goods under a stamped bill of lading, and to insert in the instrument that freight is to be paid on delivery of its whole contents.

I have not discussed the point alluded to on the argument, that the ship should be required to deliver the goods as they come out, on receiving the portion of freight due on the goods as discharged. Independently of the practical difficulties which prevent the adoption of such a course, it has seemed to me that in strict law, there were but two alternatives,—either to affirm the right of the shipper to a simultaneous delivery before

paying any freight, or that of the ship to the payment of the entire freight before any goods are delivered. The latter is, I think, the true view of the subject, and the right of the shipper to examine his goods or insist upon a simultaneous delivery, must be controlled by the usage of the port, the stipulations of the bill of lading, and the practical necessities of the case; and inasmuch as a delivery at the wharf satisfies the contract of the carrier, his remuneration must be deemed to be for transporting the goods and delivering them in that manner, and that the additional expense of conveying them to and keeping them in a warehouse when necessary, ought not to fall upon him any more than the wharfage, which it is admitted is to be paid by the shipper. It may be observed, in addition, that the examination of the goods, even if they are collected together on the wharf, must often be hasty and imperfect, and that the substantial security of the shipper is the personal liability of the master and owners, and that of the ship, in rem, to satisfy any reclamations he may make. The libel must be dismissed.

[NOTE. This decree was affirmed by the circuit court (unreported), and libelant appealed to the supreme court, where the decree was reversed, upon the grounds that the whole freight was not due upon a partial delivery; that the consignee was entitled to an opportunity to examine his goods before payment of the freight; that the delivery was a condition precedent to payment of freight; and that the custom at San Francisco did not affect the rules of law pertaining to bills of lading. Brittan v. Barnaby, 21 How. (62 U. S.) 527.]